# R. L. Thornton et al v. G. B. Hodge et al.

**Wills—Bequest—Construction.**

A bequest that leases of land, when laid of should be "divided equally among my three daughters * * * and when the leases expire, the title and right of property is to vest in the heirs of such of my daughters, to whom the same was assigned," held to mean that as the land was laid off and leased, they were to be assigned severally, but equally, and the heirs to take the lands thus leased and assigned, regardless of the relative value when the leases expired.

**Wills—Hiatus, How Cured.**

Where a will leaves a hiatus between the time of the performance of a bequest and the recipiency by the remaindermen, the whole instrument must be construed in determining the testators intention, and presumptions to be strongly in favor of the legatees.

**Descent and Distribution—Rights of Remaindermen.**

Though a trustee under a will may have failed to explicitly carry out the provisions of a will, by agreement with the then heirs, this would not effect the rights of remaindermen, nor relieve the trustee of fiducial responsibilities.

**Same—Right of Remaindermen to Have Partition Made.**

Though a legacy may be entailed with rights to remaindermen, the latter, upon the death of their life tenant, would have the right to elect to hold their portion disrobed of the special trust; this would not be an injury to the other joint life tenants of other remaindermen, a partition giving them the same right of ingress and egress.

**Trusts—Should be Performed Within a Reasonable Time.**

A trust, under a will, should be performed within a reasonable time, and where a trustee is negligent, a court of equity may be called upon to order a specific performance as designated.

**Same.**

A chancery court has power to close the trust as to a trustee in a will, upon rule, and retain possession of the cause and by rule or otherwise, from time to time, direct and control the trust and trustee.

**Same.**

It is necessary however, that a specific performance for a division of land under the original trust, should be ordered performed by the original trustee.

8

Discent and Distribution—Partition Between Legatees—Application of Rule.
 The principle that where a tract of land is directed to be sold and
 proceeds divided between a multiplicity of persons, none are entitled
 to a reconversion, without the unanimous consent of the whole, has no
 application to a case, where only an undivided moity was to be con-
 verted.

APPEAL FROM CAMPBELL CIRCUIT COURT.

April 23, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The court on proceedings for that purpose having removed W. J. Berry as a trstee under the will of James Taylor, deceased, and having closed the trust as to Thornton so far as the children and heirs of Mrs. Tibbatts are concerned, both orders are here on appeal.

We are satisfied that the proper causes for the removal of Berry appear in the record, hence that order is affirmed, and will be no further considered.

It is insitsed that the other order, even if proper, could not be upon rule as in this case, but must be upon a new suit by petition. But inasmuch as there was a pending suit relative to the trust which contained other prayers and objections beside the removal of Berry, it was proper that the chancellor should retain possession of the cause and could from time to time by rule or otherwise direct and control the trust and trustee, hence it is important to inquire into the more substantial question whether said order was authorized under the will of the testator.

In the second section of codicil No. 2, the testator appointed W. J. Berry and R. L. Thornton trustees, and directed

"that they lay off two hundred acres of land on Licking river, and adjoining the town of Newport, into convenient lots for building, as an addition to the town of Newport. Said lots to be laid out on the most approved plan. And first that they shall lease out for the term of fifty years one-half of said property, the lessee to pay an annual rent for the lots, together with all State, county and other taxes, that may be levied on the same. The said ground so

leased to be subject to such terms and conditions as to revaluation and forfeiture as the said trustees shall deem best.

"Secondly. If, however, it shall be found the foregoing plan of leasing said ground will not be advantageous and profitable to my heirs, then I empower said trustees to change the leasing, as to them shall seem best, but at whatever term the leases end and expire, whether for a longer or shorter period than fifty years, the property is to revert to such of my children or their heirs, to whom the same may have been asisgned by my said trustees. *The said trustees are to divide the leases so made* of said property *equally among my three daughters,* who are to receive the annual rents for the same, for their own use and benefit, *during their natural lives;* and *when the leases expire the title and right to the property is to vest in the heirs of such of my daughters, to whom the same was assigned, and set off by said trustees.* The other moiety of said ground or lots the said trustees are to sell and convey the same to purchasers, the sales to be made on such terms and conditions that like sales are made. X X X X The fund arising from the sale of the moiety of said tract the trustees are to invest in improved or productive property in Newport, Cincinnati or Covington, yielding a fair rent; or if my daughters prefer it, they may have houses for rent erected with the funds on the land laid off into lots west of the road from Newport to Alexandria, or on any lots I may have devised them in Newport, or elsewhere. The trustees are jointly and severally authorized and empowered to act in refernce to said property."

He then provided for the compensation of the trustees, and then that:

"In laying out and selling the aforesaid property I do not wish it to be hurried into market, and the whole of said ground adjoining the town of Newport, and that on the Ohio river need not be laid out at one time; and as to the time of selling, I wish the said trustees to consult and advise with my said daughters and son James on the subject.

"As the town of Newport improves, ground will be wanted for lots, and I wish this want supplied by bringing into market this vacant ground—but not to force a sale, or sacrifice it."

General James Taylor, the testator, died November 7, 1848, and Mrs. Tibbatts in January, 1868, and said judgment was pronounced July 31, 1868, something less than twenty years after the trust first took effect.

Eighty acres of the Newport land had been sold by testator, leaving only 120 acres. It is insitsed that as this land being devised to the three daughters jointly and their heirs and that inasmuch as the title of the leased lots were not to vest in their heirs until the leases expired that it was out of the power of the heirs of one of these daughters to elect to hold their portion disrobed of the trust, for the remaindermen being uncertain, depending on the life and existence of those who might stand as heirs at law of Mrs. Tibbatts when the leases might expire, and that when the leases were to be made, how long to run and when to expire, were all uncertain, depending on the discretion and action of the trustees.

It is evident that it was contemplated and directed by the testator that said land should, within a reasonable time, be laid off into town lots, with streets and allews on the most approved plan, not however hurried into market to the detriment of the subjects of his bounty; but that this was to be the primary manner of division is beyond doubt.

It may be also, that the testator desired to be to some extent a public benefactor to the town where he had so long and prosperously lived, and where he had accumulated such a vast estate, by bringing into market and within the reach of its humbler citizens, of moderate means, homes in which they and their families could be comfortable and independent, and this is to be inferred from the expression in his will *"as the town of Newport improves, ground will be wanted for lots, and I wish this want supplied by bringing into market this vacant ground."* At the time of testator's death, Mrs. Harris was 46 years old, Mrs. Tibbatts 43, and Mrs. Williamson, a few years younger, was, say, 40 years of age. At the time of the judgment, therefore, Mrs. Harris was near 66, and Mrs. Williamson near 60, years of age; yet this land had still

not been laid off into town lots, half sold on the usual terms, and the other leased out, for longer or shorter periods, and the proceeds of sales invested in productive property in Newport, Covington or Cincinnati, nor to the improvement of the lots devised by testator to his respective daughters, in this Newport addition or other lots.

The leases of the reserved half of the lots, when laid off, which were not to be sold, were directed by the testator to be

> "*divided equally among my three daughters,* who are to receive the annual rents for the same, for their own use and benefit during their natural lives, and when the leases expire, the title and right is of property to vest in the heirs of such of my daughters, to whom the same was assigned."

It is clear that the testator intended that as the lots were leased the leases should be assigned severally, but equally, to his three daughters, and that this should be a partition not only of the annual profits, but of the lots also, for the heirs of the respective daughters were to take the lots, the leases of which were so assigned, and this no matter how the relative value of the lots may have changed when the leases shall expire.

But it is said he left a hiatus between the death of his respective daughters and the termination of the leases so assigned them wherein the title of the lots are not disposed of and therefore not vested in the heirs of such deceased daughter, and perhaps the language, construed by itself alone, would so import, and such would be the impression on a casual reading of the will, but such was not the meaning or intention of the testator, as is manifest from the instrument itself.

His daughters were to receive to their separate and sole use for life the annual rents on the leases as assigned them. but after their death until the leases should expire no specific direction is given as to the annual profits, and if their respective heirs are not to take these then it is undisposed of or go somewhere else by some other clause, which would be repugnant to the intention of the testator as manifested by the general tenor of the will.

Besides, in this very clause of section two of codicil two, after giving the said trustees discretion on finding it to be advantageous

to his "heirs" to lease on longer or shorter time than fifty years, he directs,

> "but at whatever term the leases end and expire X X X . the property is to revert to such of my children or their heirs to whom the same may have been assigned."

thus showing that he contemplated that some and perhaps many of the leases might expire during the lives of his daughters.

But if not, it was manifestly his intention that when the leases should be assigned and the holder of the life estate should die, that the lots and leases should go immediately to the heirs of such life tenant, without leaving any hiatus, and which would have appeared· beyond all doubt had the words "or life estate" apepared between the words "leases" and "expire," which would have made the devise read, "and when the leases, or life estate, expire the title and right to the property is to vest in the heirs of such of my daughters, to whom the same was assigned," and yet looking at the whole will, and the intention as manifested therein, we cannot any more doubt that such was his intention than if said words had appeared therein.

Had this land been laid off into lots and half of these leased and the leases assigned, as was contemplated by the testator, the land would thereby have been partitioned and Mrs. Tibbatts' heirs would now be in the full enjoyment of both the possession and legal title.

It may be that the trustee has consulted the ·desires of the three daughters in not laying off this ground into streets and alleys, but this could not effect the intention of the testator, who intended · and provided for a partition in this way.

Nor can a partition of the lots, when the land shall be so laid off, injure either of the other joint life tenants of the remainder-men, for as to their lots there will then be ingress and egress just as intended by the testator.

It is evident that the trust was only to exist until the lots were sold and leased, and when the proceeds of sales should be invested and partitioned, but as to these matters a large discretion was given to the trustees and their judgment, and a reasonable and liberal time should be allowed, but it was not intended by the testator to make a life business of this by his designated trustees and then such successor as the court should appoint.

As the lots should be leased and the leases assigned the whole trusts as to such lots would be performed and henceforward were to be controlled by the tenant for life and her heirs, but according to the conditions which the trustee should see proper to incorporate in the lease.

As these trusts have not been performed within a reasonable time, and as much more time has already elapsed than was contemplated in ridding the property of the control of the trustees, we see no legal reason why the heirs of Mrs. Tibbatts, who are the remaindermen after the expiration of her life estate, should not have their portion assigned free of the trusts and control of the trustee. But to do this the court should first direct the trustee to proceed to lay off said land into lots, streets and alleys on an approved plan, and then should direct the portion due Mrs. Tibbatts' heirs to be asisgned them and should require both the plan and partition to be reported to the court, subject to its approval, and finally to wind up and settle the accounts of the trustee Thornton with Mrs. Tibbatts' heirs.

Had the land been laid off into lots and sold and proceeds invested as directed, a partion of the half so sold would have been accomplished, and so of the half directed to be leased and the leases asisgned, and Mrs. Tibbatts' heirs would have taken their portion unencumbered with the trusts; the non-performance of the trust should not be allowed to affect their rights, especially as to the title of the half to be leased.

And the land is to be divided into lots, thus partitioning it into small tracts which may be assigned to a part of the beneficiaries without injury as to the other joint owners, it is not perceived that any principle recognized in our equity jurisprudence or the numerous adjudicated cases referred to forbid the proposed election by these heirs. The principle that where a tract of land is directed to be sold and the proceeds divided between a multiplicity of persons none are entitled to a reconversion without the unanimous consent of the whole has no application to this case, for here only an undivided moiety was to be converted; the trusts as to it was different from those as to the other undivided moiety. The land should before now have been laid off into lots, and half the lots sold, and the other half leased. Had this been done,, a complete partition would have been effected, and Mrs. Tibbatts' heirs would have recovered their portion of the half leased free of the

trusts, and thir portion of the half sold, would have been invested in other real estate, which would likewise have come to them disencumbered of any kind of trust. As this would have been the result had the trusts been performed, the chancellor should now see that those rights be secured by directing the land to be laid off into lots and their portion partitioned to them.

The married women joined their husbands in a written election and demanded the same on privy examination by the court, which we regard as proper and binding on them and their heirs. Still, as the division is now directed in a different manner which might possibly affect their election, they should again elect.

For this error alone in not directing the partitioning the whole tract into lots as a prerequisite to a division, the judgment as to Thornton is reversed, with directions for further proceedings as herein indicated.

The order removing Berry is *affirmed*.

*Stevenson & Myers, for appellants.*

*Hodges, Menziso & Farber, Hallam, for appellees.*